UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NATHANIEL HOPKINS, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:13-cv-01404-TAB-JMS |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S COMPLAINT FOR REVIEW**

Plaintiff Nathaniel Hopkins, III filed a claim for Social Security disability benefits alleging that he has been disabled since November 18, 2008, due to a back injury and right eye blindness. Hopkins was represented by counsel at a hearing before an Administrative Law Judge, at which Hopkins and a vocational expert testified. The ALJ denied Hopkins' claim, finding that he retained the capacity to perform light work. The Appeals Council denied Hopkins' request for review. This appeal followed.

Hopkins makes a number of general, far-reaching allegations. For example, Hopkins alleges, "The denial decision must be reversed because the ALJ ignored or rejected all of the evidence proving he was disabled." [Filing No. 18, at ECF p. 7.] But of course this assertion is not correct. Following the hearing the ALJ issued a ten-page decision that discussed the evidence and provided reasons for denying Hopkins' claim. The real question is whether the ALJ's decision is supported by substantial evidence. *Powers v. Apfel*, 207 F.3d 431, 434 (7th Cir. 2000).

In this regard, Hopkins' arguments can be distilled into three rather familiar issues on appeal: (1) does substantial evidence support the ALJ's decision that Hopkins' condition does not meet or equal a listing?; (2) did the ALJ err in failing to summon a medical advisor?; and (3) was the ALJ's credibility finding patently erroneous?

With respect to the first issue, Hopkins' primary argument is that the ALJ erred by not discussing Listing 1.04A. [Filing No. 18, at ECF p. 10.] However, the ALJ specifically mentioned that he considered whether Hopkins' impairments met or medically equaled Listing 1.04, and discussed evidence related to this listing throughout his decision. [Filing No. 16-2, at ECF p. 17-20.] Hopkins emphasizes that the ALJ discussed Listing 1.04, not Listing 1.04A. But Listing 1.04A is necessarily subsumed by Listing 1.04, which references three types of disorders of the spine. Hopkins argues that the central requirement for Listing 1.04A is a herniated disc, and that a March 8, 2011, lumbar spine MRI revealed that he had two herniated discs. However the MRI actually showed only "mild" lumbar changes. [Filing No. 16-7, at ECF p.100.] The MRI report further stated, "No significant herniation herniations or forminal narrowings." [Id.]

Hopkins also argues that the ALJ erred in rejecting Dr. Vikas Karla's evaluation. [Filing No. 31, at ECF p. 5.] However, in evaluating Hopkins' functional limitations Dr. Karla specifically noted that these limitations were "as per patient." [Filing No. 16-7, at ECF p. 103.] The ALJ assigned Dr. Karla's opinion "little weight" as a result of the subjective nature of the complaints; the fact that the opinion fails to identify what symptoms or impairments resulted in the significant limitations noted; and because the opinion is conclusory and fails to coincide with organic findings. [Filing No. 16-2, at ECF p 19.] The ALJ gave sufficient reasons for his conclusions, which therefore are supported by substantial evidence.

The Court next turns to whether the ALJ erred in failing to summon a medical advisor. Hopkins alleges that the ALJ could not reasonably rely on the state agency physicians because their opinions were dated October 12, 2010, and December 10, 2010, which predated other evidence in the record. Specifically, Hopkins argues that the agency physicians did not review the February 21, 2011, primary care treatment [Filing No. 16-7, at ECF p. 108], the March 18, 2011, lumbar spine MRI evaluation [Filing No. 16-7, at ECF p. 99], the July 27, 2011, neurology treatment [Filing No. 16-7, at ECF p. 100], the April 11, 2011, primary care treatment [Filing No. 16-7, at ECF p. 11], or the August 1, 2011, and August 22, 2011, functional evaluations [Filing No. 16-7, at ECF p. 103-04; Filing No. 18, at ECF p. 12.]

Social Security Ruling 96-6p explains the two circumstances when an ALJ should summon a medical advisor: (1) when no additional evidence is received, but in the opinion of the ALJ, the signs, symptoms, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or (2) when additional medical evidence is received that in the opinion of the ALJ may change the state agency medical or psychological consultant's findings that the impairment is not equivalent in severity to any impairment in the listing of impairments.

Hopkins is correct that the review by the state agency physicians (Drs. Ruiz and Bond) did not include the subsequent medical information Hopkins cites. But as set forth above, this fact alone is not enough to require the ALJ to summon a medical advisor. Rather, the evidence must in the opinion of the ALJ change the state agency doctor's findings on equivalence. Here, the ALJ concluded that after "careful consideration of the entire record" Hopkins had the residual functional capacity to perform light work. [Filing No. 16-2, at ECF p. 17.] Of course just because the ALJ proclaimed that he reviewed the entire record does not mean this

necessarily occurred. It is incumbent on this Court to ensure that the ALJ actually reviewed this additional evidence, and to determine if the ALJ's conclusion based upon that evidence is substantially justified.

A review of the ALJ's decision conclusively establishes that the ALJ reviewed all of the additional evidence that was not before the state agency physicians. [Filing No. 16-2, at ECF p. 18-19.] Hopkins argues, "Presumably if they had reviewed all of the evidence they would have reasonably determined he was totally disabled." [Filing No. 18, at ECF p. 12.] As the Commissioner correctly observes, however, this is nothing more than Hopkins' conjecture. [Filing No. 26, at ECF p. 13.] Hopkins has the burden of showing that the additional medical evidence would change the state agency medical consultant's findings so as to warrant the ALJ summoning a medical expert. *See Howell v. Sullivan*, 950 F.2d 343, 348-49 (7th Cir. 1991) (claimant maintains the burden to provide medical evidence that proves he is impaired and that a need to summon a medical advisor exists). *See also D.N.M ex rel. Brame v. Colvin*, No. 1:13-cv-00884-RLY-DKL, 2014 WL 4636390, at *7 (S.D. Ind. Sept. 16, 2014) ("[It is Plaintiff's] burden to show that the nature of these items of evidence, compared to the other evidence the state-agency physicians reviewed, required the ALJ to obtain a supplemental medical opinion."). Hopkins has not met this burden.

For example, the July 2011 treatment notes Hopkins relies upon do support that he continued to have pain. [Filing No. 16-7, at ECF p. 100.] However, as the ALJ noted Hopkins did not describe any weakness or other symptoms and was referred to a pain clinic, but there is no evidence that Hopkins followed up on this treatment. [Filing No. 16-2, at ECF p. 18; Filing No. 16-7, at ECF p. 100.] Moreover, the March 18, 2011, MRI Hopkins relies upon showed only "mild" lumbar changes, and the MRI report indicated, "No significant herniation herniations or

4

forminal narrowings." [Filing No. 16-7, at ECF p. 100.] In addition, Dr. Karla specifically noted the subjective nature of Hopkins' claimed limitations and for this reason, and others stated above, the ALJ gave little weight to Dr. Karla's opinion. [Filing No. 16-2, at ECF p. 19.]

This is not to say the ALJ's analysis was not without its shortcomings. For example, the ALJ indicated that it was Dr. Karla's opinion that Hopkins should not do any *heavy* lifting. [Filing No. 16-2, at ECF, p. 19] This is not exactly what Dr. Karla indicated on the form in question. Under the "restrictions" section of the form, Dr. Karla wrote, "-no lifting of weight – no bending." [Filing No. 16-7, at ECF p. 103.] However, under the "prognosis" section of the form, Dr. Karla wrote, "Patient may not be able to do heaving lifting but his pain level may decrease after seeing his pain clinic for some epidural injection." [Filing No. 16-7, at ECF p. 103.] So Dr. Karla's statements in this form, as well as the ALJ's interpretation of these statements, are somewhat inartful. But what can be extrapolated from this form is that Hopkins had pain and lifting restrictions, and that Dr. Karla thought Hopkins might obtain relief from the pain clinic. In response, the ALJ specifically referenced the lack of any evidence that Hopkins' ever followed upon Dr. Karla's recommendation and limited Hopkins to light duty along with other work restrictions.

While the ALJ's reference to heavy lifting is flawed, Hopkins fails to meaningfully address this issue in his briefs. Hopkins briefly takes issue in his reply brief with the ALJ's failure to advise the vocational expert of Hopkins' "no lifting of weight" and "no bending" restrictions. [Filing No. 31, at ECF p. 8.] Of course, Hopkins was represented by counsel at his administrative hearing, so his counsel could have clarified this point for the vocational expert. In any event, Hopkins' overall discussion of the ALJ's failure to summon a medical advisor is

5

spartan at best. Based on this record, the Court is not convinced the ALJ erred in failing to summon a medical advisor.

Lastly, the Court addresses the ALJ's credibility finding. Hopkins alleges the ALJ's credibility finding was "illogical" and "conclusory," and "contrary to the evidence." [Filing No. 18, at ECF p. 15-18.] The ultimate issue, however, is whether the ALJ's credibility finding is patently erroneous. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); Social Security Ruling 96-7p.

Unfortunately, Hopkins does not flesh out this argument, relying instead upon sweeping statements and what appear to be cut-and-paste references to case law. [Filing No. 18, at ECF p. 15-18; Filing No. 31, at ECF p. 7.] Skeletal arguments such as these are not helpful in determining whether the ALJ's credibility assessments are flawed. It is true, as Hopkins argues, that the ALJ used boilerplate language in his credibility determination. [Filing No. 31, at ECF p. 7; Filing No. 16-2, at ECF p. 17.] The mere inclusion of such language, however, does not undermine the ALJ's credibility determination. This Court must determine whether the ALJ otherwise explained his conclusions adequately and offered reasons grounded in the evidence. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). A review of the decision reveals that the ALJ adequately explained his decision.

The ALJ cited to numerous factors to support his finding that Hopkins' complaints of debilitating pain and related symptoms were not fully credible. The ALJ considered Hopkins' activities, his course of treatment and medications, and his failure to follow through with treatment recommendations. [Filing No. 16-2, at ECF p. 19-20.] The ALJ also discussed the effectiveness of Hopkins' treatment and the evidence showing that Hopkins' pain decreased when attending therapy. [Filing No. 16-2, at ECF p. 18.] The ALJ also discussed the intensity

6

and frequency of Hopkins' pain, as well as the observations by his treating doctors and by the medical consultants. [Filing No. 16-2, at ECF p. 17-20.] Contrary to Hopkins' contention, the ALJ's reasoning was not illogical, conclusory, or contrary to the evidence. In short, Hopkins has failed to demonstrate that the ALJ's credibility determination is patently erroneous.

For these reasons, the decision of the Commissioner is affirmed, and Hopkins' brief in support of appeal [Filing No. 18] is denied.

Dated: 3/31/2015

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Joshua P. Dehnke
OFFICE OF GENERAL COUNSEL, SOCIAL SECURITY ADMINISTRATION
joshua.dehnke@ssa.gov

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov